The State of Ohio, Appellee, *v.* Farley, Appellant.*

---

*Motion for leave to appeal overruled, January 25, 1961. Appeal dismissed, 171 Ohio St., 483.

(No. 2561—Decided April 29, 1960.)

*Mr. Mathias H. Heck,* prosecuting attorney, and *Mr. Frank C. Short,* for appellee.
*Messrs. White & Zimmerman,* for appellant.

*Per Curiam.* This is an appeal on questions of law from a sentence and judgment of the Common Pleas Court of Montgomery County entered on a verdict of a jury in which the defendant, appellant herein, was found guilty of murder in the second degree.

The indictment charges that the defendant on or about December 4, 1958, "did purposely and maliciously kill Julius Phillip Milnickle." The defendant entered a plea of not guilty, and also claimed self-defense.

The defendant assigns as error: That the verdict and judgment is contrary to the manifest weight of the evidence and contrary to law; error in admitting certain colored photograph slides of the nude body of the deceased and in permitting such slides to be projected upon a screen before the jury; in the exclusion of evidence offered by the defendant; misconduct on the part of certain members of the jury and the prosecuting attorney; and other errors apparent on the face of the record.

The defendant admitted that he shot and killed the deceased with a .32 caliber revolver when they were standing a few feet apart. The defendant was 16 years of age and the deceased 20 years of age.

The shooting took place at about 10:30 p. m. on December 4, 1958. The defendant and a 16-year-old companion had just

left a motion picture theatre and were walking north on Jefferson Street near East Fourth Street in the city of Dayton when a number of boys were running east on Fourth Street at that intersection. One of the boys, subsequently identified as the deceased, was a considerable distance ahead of the others. The evidence shows that the boys did a "lot of hollering" as they ran. The defendant and his companion followed the other group for a distance of less than 2 city blocks to a parking lot on the southeast corner of East Fourth Street and Patterson Boulevard. The deceased and his companions were in the parking lot near his automobile, which was parked a distance of about 50 feet from the corner where defendant and his companion stopped on the sidewalk. The two groups exchanged words. The defendant testified that at that time he saw the deceased open his car and take a shiny object out of the glove compartment and that the deceased walked to the corner with his hands in his pockets and called the defendant a bad name. The defendant testified that he thought the deceased had a gun and that he got scared and shot him twice. The defendant ran from the scene and was apprehended later that evening.

The evidence presented by the state was to the effect that the deceased got a flash light out of his car and that the flash light was later taken out of his hand as he lay on the ground after he was shot; and that the deceased, just before the shooting, had his hands at his side and not in his pockets. The defendant's companion testified that the defendant pulled out his gun and waved it at the other group and "hollered dirty names" and wanted them to come over to the sidewalk; that the defendant then placed the gun in his shirt; that the deceased did walk over to the corner and said to the defendant that if he were going to do anything, do it now; that the defendant asked his companion to pull out his gun and he told the defendant he wouldn't do it; and that his companion asked the defendant to leave but that the defendant "just pulled out his gun and shot him." This witness testified further that the deceased had nothing in his hands and that after he stopped near the sidewalk he made no move toward the defendant, that three shots were fired, and that the second shot was fired after the deceased was on the ground.

The above recital of the pertinent facts is sufficient for the determination of the questions raised by the defendant. On the whole record, the jury had a right to conclude that the defendant was the aggressor rather than the deceased. The burden of proving self-defense rests on the defendant, which he must prove by a preponderance of the evidence. 15 Ohio Jurisprudence (2d), 494, Section 324. We have no difficulty in resolving the issue of self-defense against the defendant. But the defendant contends that the facts do not justify a conclusion that the defendant "purposely and maliciously" killed the deceased. The court instructed the jury as follows:

"To do an act purposely means to do it intentionally, not accidentally or by mischance. Ordinarily the purpose or intention of a person in doing an act is to be gathered from the facts and circumstances under which the act was done. The presence or absence of a purpose or intent to kill is a question of fact to be determined by the jury from all the facts and circumstances in the case. It is a general principle of law that what a person does wilfully, he intends to do, and is presumed to have intended all the natural and probable consequences of his voluntary acts. Thus, where an intentional wound is inflicted upon a person with a dangerous weapon and the weapon is used in a manner calculated to destroy life, a purpose or intent to kill such person may be inferred from the use of such weapon unless the circumstances are such as to indicate the absence of such purpose or intent."

This charge is supported by the case of *State* v. *Robinson*, 161 Ohio St., 213, 118 N. E. (2d), 517. The pertinent part of the syllabus is as follows:

"4. Whoever purposely and maliciously kills another is guilty of murder in the second degree.

"5. In such case, an intent to kill may be presumed where the natural and probable consequence of a wrongful act is to produce death, and such intent may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.

"6. Where the fact of killing is proved, malice is to be presumed, and all the circumstances of justification, excuse, or ex-

tenuation must be made out by the accused, unless they appear from the evidence adduced against him."

In *State* v. *Stallings*, 82 Ohio App., 337, 79 N. E. (2d), 925, the first and second paragraphs of the syllabus are as follows:

"1. Under a charge of murder in the second degree, proof that the killing was done purposely may be deduced from the attendant circumstances, the type of instrument used, the manner of its use, and its tendency to destroy life when used in that manner.

"2. Only simple malice is required to be shown in murder of the second degree, and it may be implied from the facts proved."

See, also, *Lindsey* v. *State*, 69 Ohio St., 215, 69 N. E., 126, where the court in its opinion, beginning on page 232, said:

"* * * Now, when it is remembered that the rule in Ohio, is and from the earliest time, as shown by the holdings in *The State* v. *Turner*, Wright, 20, and *The State* v. *Town*, same vol., 75, down to *Davis* v. *The State*, 25 Ohio St., 369, has been that 'where the fact of killing is proven, malice is to be presumed,' and *Weaver* v. *The State*, 24 Ohio St., 584, that 'the shooting with intent to kill being established, the law implies malice; and the malice thus implied can only be rebutted by showing circumstances of justification or excuse,' * * *."

In the case at bar the trial judge left it to the jury to determine whether there was a showing of malicious killing, and that the jury may infer malice from the facts proved. We find no error in the court's charge relative to self-defense, purpose and malice; neither do we find the judgment to be contrary to law.

The defendant claims that the showing on a screen of slides of the nude body of the deceased was prejudicial to the defendant. The state claims the slides showed the location of the bullet wounds and were admissible for that purpose. The direction which the bullets took and which shot caused death were issues of fact. The state claims the slides more clearly demonstrated these facts. This question was disposed of in the case of *State* v. *Viola*, 51 Ohio Law Abs., 577, 82 N. E. (2d), 306. On page 584 the court said:

"Defendant's counsel next contend that 'the trial court erred in admitting Exhibits F and H, pictures of the body of the

deceased, James Mancini, when the question of his death was undisputed, and the purpose of the introduction thereof was to prejudice the jurors against the accused'; and 'in admitting state's Exhibit D, the clothing of James Mancini, and sending said clothing out to the jury together with the other exhibits, for the reason that said exhibit was inflammatory.'

"Photographs are always admissible for the purpose of illustration, and are not inadmissible merely because shocking, horrible or tending to arouse passion or prejudice. See Underhill's Criminal Evidence, Fourth Edition, page 161. * * *."

See, also, 15 Ohio Jurisprudence (2d), 606, Section 436.

We find no prejudicial error in the admission of evidence.

The defendant contends that the court erred in excluding testimony offered, and later proffered, by the defendant to the effect that his reputation was excellent in the state of Tennessee in the community in which his uncle lived and with whom the defendant spent several summer vacations. It is obvious that the proper foundation was not laid for general reputation. In 15 Ohio Jurisprudence (2d), 514, Section 346, is found this statement:

"General character has been defined as the reputation which one bears or the estimation in which he is held in the community in which he lives, and it is not the personal knowledge of individuals. It is generally coextensive with his acquaintance, and cannot consist of a local reputation confined to a neighborhood remote from his residence, and in a community not having the means of forming from personal acquaintance an intelligent judgment on the subject."

In the footnote reference is made to the case of *Griffin* v. *State*, 14 Ohio St., 55, which laid down the rule that reputation of a special nature, rather than general, in a remote place, where the defendant did not reside, is not competent. In the instant case the record does not show that the witness knew what the defendant's general reputation was in the state of Tennessee; neither was the witness asked, and no answer was proffered, respecting the reputation of the defendant for peace and quiet. Moreover, several witnesses called by the defendant gave testimony respecting the defendant's general reputation in Dayton,

Ohio, where he resided. We find no prejudicial error in excluding this testimony.

The defendant claims misconduct on the part of three of the women jurors who, according to affidavits filed by the defendant, entered the women's restroom in which at the time were the mother and grandmother of the deceased. The affidavit stated that some conversation passed between them. Counter affidavits were filed denying the charges. This matter was made a ground for new trial and was passed on by the trial court adversely to the defendant. If the court believed the statements made in the affidavits filed by the state, which it had a right to do, there would be no support for the charge of misconduct. This assignment is not well made.

The defendant claims misconduct on the part of the prosecuting attorney. The comment made occurred during cross-examination of the defendant relative to the film he and his companion were viewing in the theatre. The record, on page 195, is as follows:

"Q. You didn't like the picture too well, did you, Carl? A. No. I didn't pay much attention to it.

"Q. It wasn't a rootin, shootin' type picture, was it? A. I didn't care anything for the picture. It was a love picture and I didn't care anything for it.

"Q. When I was your age I don't think I would have cared to see a love picture if I had the chance to see a wild western."

Defense counsel moved to withdraw a juror and for the continuance of the case, which motion was overruled. The court then instructed the jury to disregard the remarks of the prosecuting attorney. Conceding that the remarks should not have been made, nevertheless we do not find it to be prejudicial. This assignment is not well made.

In our opinion the defendant had a fair trial and substantial justice has been done. We do not find any error in the record prejudicial to the rights of the defendant.

*Judgment affirmed.*

WISEMAN, P. J., CRAWFORD and KERNS, JJ., concur.